**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

BRANDON HILL, on behalf
of himself and all others
similarly situated,

     Plaintiff,                            Case No. 0:20-cv-60746-AHS

v.

SPIRIT AIRLINES, INC., a foreign
for profit corporation,

     Defendant.

_____/

**DEFENDANT SPIRIT AIRLINES, INC.'S**
**ANSWER AND AFFIRMATIVE DEFENSES**
**TO PLAINTIFF'S CLASS ACTION COMPLAINT**

Defendant, SPIRIT AIRLINES, INC. ("**Defendant**" or "**Spirit**"), by and through the undersigned counsel, pursuant to Fed. R. Civ. P. 7 and 8, files its Answer and Affirmative Defenses to Plaintiff, BRANDON HILL's, Class Action Complaint (the "**Complaint**"), and states as follows:

**INTRODUCTION**[1]

1.     Spirit is the seventh-largest air carrier in the United States, providing passenger air travel services within the United States and to select destinations outside the United States in the Caribbean and Latin America.

     **ANSWER**:    Denied as stated.

---

[1] Headings herein are used solely to mirror the headings contained in the Complaint and should not be construed as an admission or denial by Defendant on any issue.

2.      For the last decade, Spirit has operated as an ultra-low-cost carrier, meaning that it offers low base fares by including minimal inclusions in the fare and a greater number of add-on fees.

**ANSWER**:    Denied as stated.

3.      Spirit's provision of low-cost air service has been riddled with criticism and controversy.  Indeed, Spirit has been recognized as the airline with the highest rate of consumer complaints to the United States Department of Transportation ("DOT").  In 2015, for example, the passenger complaint rate for Spirit Airlines was nearly ten times higher than the airline industry's overall complaint rate.

**ANSWER**:     Spirit objects to the extent that the allegations in paragraph 3 are narrative and/or argumentative.  Without waiving any objections and subject thereto, denied as stated.

### The Novel Coronavirus Severely Impacts Spirit's Operations

4.      On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness.  Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or SARS-CoV-2.  The illness caused by the virus has been termed COVID-19.  By January 21, 2020, officials in the United States were confirming the first known domestic cases of COVID-19.

**ANSWER**:     Admitted as to the existence of the COVID-19 pandemic.  Without knowledge as to the remaining allegations.

5.      Due to an influx of thousands of new cases in China, on January 30, 2020, the World Health Organization officially declared COVID-19 as a "public health emergency of international concern."

**ANSWER**:   Admitted as to the existence of the COVID-19 pandemic.   Without knowledge as to the remaining allegations.

6.      On March 11, 2020, the World Health Organization declared COVID-19 a pandemic.

**ANSWER**:   Admitted.

7.      In efforts to curb the spread of the virus, federal, state and local governments have implemented temporary travel restrictions and guidelines advising against essential travel.  In the United States, the federal government has limited travel from China, Europe, and the United Kingdom, permitting only the return of U.S. citizens and permanent residents.  The Department of State also advised on March 31, 2020, that U.S. citizens should temporarily avoid all international travel, with the exception that U.S. residents abroad should arrange for immediate return to the United States where possible.

**ANSWER**:   Admitted.

8.      State and local governments have also restricted local travel.  On March 16, 2020, seven counties in the San Francisco, California area announced shelter-in-place orders to reduce local traffic to activities necessary to perform "essential" activities.  Other states, counties, and municipalities have since implemented similar shelter-in-place orders, and as of the drafting of this Class Action Complaint, at least 316 million people in at least 42 states, three counties, nine cities, the District of Columbia, and Puerto Rico are living under such orders.

**ANSWER**:   Admitted as to the existence of the COVID-19 pandemic.   Without knowledge as to the remaining allegations.

9.     As the travel limitations expanded and virus fears mounted, consumer demand for air travel, particularly leisure and non-essential business travel, quickly declined.  In response to this declining demand, Spirit has cancelled many flights in the United States to avoid flying planes with too many empty seats to be profitable.

**ANSWER**:    Denied as stated.

10.     The main way that airlines like Spirit determine operational capacity (i.e., how many flights it markets and flies) is by looking at passenger "load factors" on each route.  Load factors measure the percentage of seats filled on an aircraft (or set of aircraft) scheduled to depart. Load factors can be determined for an overall schedule (all flights to all destinations), for particular routes (all flights between two airports), or for particular flight service (a specific scheduled flight with its own flight number).  If load factors fall too low, airlines will determine that operating flight service as scheduled would not be profitable (or otherwise economically desirable) and will then typically modify the schedule—including by cancelling previously scheduled flights.

**ANSWER**:     Spirit objects to the extent that the allegations in paragraph 10 are narrative and/or argumentative.  Without waiving any objections and subject thereto, denied as stated.

11.     Spirit's overall load factor is typically around 84%.  But with declining customer demand in light of COVID-19, the airline has seen significant drops in its load factors.

**ANSWER**:     Spirit objects to the extent that the allegations in paragraph 3 are narrative and/or argumentative.  Without waiving any objections and subject thereto, denied as stated.

12.     Driven by the drop in travel demand, Sprit began cutting flights and will cut its April capacity by 20% and its May capacity by 25%.

**ANSWER**:     Spirit objects to the extent that the allegations in paragraph 3 are narrative and/or argumentative.  Without waiving any objections and subject thereto, denied as stated.

**Spirit Offers Credit Rather than Refunds**

13.     Despite cancelling a significant portion of its flights, Spirit is only crediting passengers for their cancelled flights and requiring passengers to wait on hold for potentially hours in an attempt to obtain a refund, despite Spirit's obligation to refund fares for cancelled flights.

**ANSWER**:    Denied.

14.     However, as will be explained below, Spirit's Contract of Carriage ("Contract of Carriage") mandates refunds, not credits in this situation.

**ANSWER**:    Denied.

15.     As numerous customers complained about this practice by Spirit and other airlines, the DOT issued an Enforcement Notice Regarding Refunds by Carriers Given the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel ("DOT Notice").    The DOT Notice provides that the airlines must refund tickets if they cancel flights due to the novel coronavirus:

> The U.S. Department of Transportation's Office of Aviation Enforcement and Proceedings (Aviation Enforcement Office), a unit within the Office of the General Counsel, is issuing this notice to remind the traveling public, and U.S. and foreign carriers, operating at least one aircraft having a seating capacity of 30 or more seats, that passengers should be *refunded promptly* when their scheduled flights are cancelled or significantly delayed.  Airlines have long provided such refunds, including during periods when air travel has been disrupted on a large scale, such as the aftermath of the September 11, 2001 attacks, Hurricane Katrina, and presidentially declared natural disasters. Although the COVID-19 public health emergency has had an unprecedented impact on air travel, ***the airlines' obligation to refund passengers for cancelled or significantly delayed flights remains unchanged.***

> The Department is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed. In many of these cases, the passengers stated that the carrier informed them that they would receive vouchers or credits for future travel. But many airlines are dramatically reducing their travel schedules in the wake of the COVID-19 public health emergency.  As a result, passengers are left with cancelled or significantly

delayed flights and vouchers and credits for future travel that are not readily usable. ***Carriers have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier. The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions). The focus is not on whether the flight disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger.*** Accordingly, the Department continues to view any contract of carriage provision or airline policy that purports to deny refunds to passengers when the carrier cancels a flight, makes a significant schedule change, or significantly delays a flight to be a violation of the carriers' obligation that could subject the carrier to an enforcement action.[1]

U.S. Dep't of Transportation, Enforcement Notice Regarding Refunds by Carriers given the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel (Apr. 3, 2020), https://www.transportation.gov/sites/dot.gov/files/2020 04/Enforcement%20Notice%20Final%20April%203%202020_0.pdf.

(emphasis added).

**ANSWER**:     Spirit objects to the extent that the allegations in paragraph 15 are narrative and/or argumentative.  Without waiving any objections and subject thereto, denied as stated.  In addition, the Dot Notice speaks for itself.

16.     Thus, Spirit's policy violates not only its own Contract of Carriage, but also federal law.

**ANSWER**:     Denied.

## PARTIES, JURISDICTION AND VENUE

17.     Brandon Hill is a Florida citizen who resides in Fort Lauderdale, Florida.

**ANSWER**:     Without knowledge.

18.     Defendant is a Delaware for-profit corporation having its principal place of business in Miramar, Florida.

**ANSWER**:     Admitted.

6

19.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).  The amount in controversy exceeds the sum of $5,000,000 exclusive of interest and costs, there are more than 100 putative class members, and  minimal diversity exists because many putative class members are citizens of a different state than Defendant.

**ANSWER**:   Denied.

20.     Venue is proper in this Court pursuant to 28 U.S.C. §1391, because this is the judicial district in which a substantial part of the events giving rise to the claims asserted herein occurred and because Defendant's principal place of business is within this district.

**ANSWER**:    Spirit objects to the extent that the allegations in paragraph 20 seek legal conclusions.  Without waiving any objections and subject thereto, admitted that venue is proper because, *inter alia*, Spirit's principal place of business is located in the Southern District of Florida.

## GENERAL ALLEGATIONS

21.     On or about January 20, 2020, Plaintiff purchased a ticket for domestic travel from Las Vegas, Nevada to Fort Lauderdale, Florida for travel on March 20, 2020.

**ANSWER**:    Admitted.

22.     Plaintiff purchased the tickets directly from Defendant through the Spirit.com website, paying a total of $192.

**ANSWER**:    Admitted.

23.     Before Plaintiff's travel date, Defendant sent an email to Plaintiff informing him that his flight had been cancelled and could not be rebooked due to schedule changes the airline imposed in light of COVID-19.

**ANSWER**:   Admitted that before Plaintiff's travel date, Spirit sent Plaintiff an email; however, the content of such email speaks for itself and the remaining allegations are denied.

24.   Despite the fact that Plaintiff could not take the flight he booked, and Defendant could not offer any comparable accommodations, Plaintiff was not given a refund, but was only offered a credit for use on a future flight.

**ANSWER**:   Denied.

**The Contract**

25.   Every Spirit passenger air travel ticket incorporates by reference (including in some cases by hyperlink) and is governed by Spirit's Contract of Carriage, which includes Spirit's Guest Service Plan.  See Exhibit A.

**ANSWER**:   Admitted; however, while it contains the identical relevant terms and conditions to the allegations in the Complaint, the applicable Contract of Carriage is dated October 3, 2019, as that is the Contract of Carriage that was in full force and effect at the time Plaintiff purchased his ticket.

26.   The Contract of Carriage is currently posted on Spirit's website at https://content.spirit.com/Shared/en-us/Documents/Contract_of_Carriage.pdf.

**ANSWER**:   Admitted.

27.   Article 10 of Spirit's Contract of Carriage governs refunds, including "Voluntary" and "Involuntary" refunds.  The Contract's Involuntary refund terms apply when "Spirit is unable to provide a previously confirmed seat and is unable to reroute the guest via Spirit."  Contract of Carriage Art. 10.2.

**ANSWER**:   Spirit objects to the extent that the allegations in paragraph 27 seek legal conclusions, and without waiving its objections, denied as phrased.  In addition, the Contract of Carriage speaks for itself.

28.     More specifically, the Contract of Carriage provides that "Guests involved in a Spirit Airlines cancellation or delay in excess of two (2) hours will have three (3) options available to them: 1) re-accommodation, 2) a credit for future travel, or 3) a refund." Contract of Carriage Art. 10.2.3.

**ANSWER**:   Spirit objects to the extent that the allegations in paragraph 28 seek legal conclusions, and without waiving its objections, denied as phrased.  In addition, the Contract of Carriage speaks for itself.

29.     If no portion of the reservation has been used, "the refund will be equal to the fare paid by the guest."  Contract of Carriage 10.2.1.  If a portion of the reservation has been used, the refund will be equal to the amount of the unused portion."  Contract of Carriage 10.2.2.

**ANSWER**:   Spirit objects to the extent that the allegations in paragraph 29 seek legal conclusions, and without waiving its objections, denied as phrased.  In addition, the Contract of Carriage speaks for itself.

30.     These involuntary refund terms include no exceptions or limitations based on the reason for Spirit's cancellation.

**ANSWER**:   Spirit objects to the extent that the allegations in paragraph 30 seek legal conclusions, and without waiving its objections, denied as phrased.  In addition, the Contract of Carriage speaks for itself.

31.     Rather, by the terms of the Contract of Carriage, when Spirit cancels a flight—regardless of reason—passengers who had tickets on the cancelled flight have the option of receiving re-accommodation, a credit for future travel, or a refund.

**ANSWER**:     Spirit objects to the extent that the allegations in paragraph 31 seek legal conclusions, and without waiving its objections, denied as phrased.  In addition, the Contract of Carriage speaks for itself.

32.     In addition, Spirit's Guest Service Plan, which is incorporated as Article 15 of Spirit's Contract of Carriage, provides that Spirit will "Provide prompt reservation refunds." Specifically, "[f]or guests due a refund, who purchased their reservations (including any charges associated with the fare) with a credit card, Spirit will process the credit within seven (7) business days."  Contract of Carriage Art. 15.5.

**ANSWER**:     Spirit objects to the extent that the allegations in paragraph 32 seek legal conclusions, and without waiving its objections, denied as phrased.  In addition, the Contract of Carriage speaks for itself.

33.     Upon information and belief, the terms of the Refund and Guest Service Plan Articles of Spirit's Contract of Carriage have been substantively identical from at least May 2016 and through April 2020.

**ANSWER**:     Spirit objects to the extent that the allegations in paragraph 33 seek legal conclusions, and without waiving its objections, denied as phrased.  In addition, the Contract of Carriage speaks for itself.

34.     Here, Plaintiff was not given the choice of being transported on the next available flight at no additional charge.  His flight was cancelled and there were no alternative flights.  Thus, pursuant to the terms of the Contract of Carriage, Plaintiff is entitled to a refund in U.S. Dollars to his original form of payment.

**ANSWER**:    Denied.

## CLASS ACTION ALLEGATIONS

35.     Pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2) and (b)(3), as applicable, Plaintiff seeks certification of the following nationwide class (the "Class"):

> All persons in the United States who purchased tickets for travel on a Spirit Airlines flight scheduled to operate from March 1, 2020 through the date of a class certification order, whose flight(s) were cancelled by Spirit, and who were not provided a refund.

**ANSWER**:    Admitted that the Complaint attempts to seek the alleged certification. Denied that the Complaint satisfies the requirements of Rule 23(a) and/or (b), or that Plaintiff and the putative class can maintain a class action against Spirit.

36.     Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, and Defendant's officers, directors, legal representatives, successors, subsidiaries, and assigns.  Also excluded from the Class are any judicial officer presiding over this matter, members of their immediate family, and members of their judicial staff, and any Judge sitting in the presiding court system who may hear an appeal of any judgment entered.

**ANSWER**:    Admitted that the Complaint attempts to define the putative class as alleged. Denied that the Complaint satisfies the requirements of Rule 23(a) and/or (b), or that Plaintiff and the putative class can maintain a class action against Spirit.

37.    Plaintiff reserves the right to amend or modify the Class definition with greater specificity or division after having had an opportunity to conduct discovery.

**ANSWER**:    Denied.

38.    The Class meets the criteria for certification under Rule 23(a), (b)(1), (b)(2), (b)(3) and (c)(4).

**ANSWER**:    Denied.

39.    **Risk of Inconsistent or Varying Adjudications. Fed. R. Civ. P. 23(b)(1).**  As the proposed class members include thousands of persons across all 50 states, there is significant risk of inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the Defendant.  For example, declaratory relief may be entered in multiple cases, but the ordered relief may vary, causing the Defendant to have to choose the court order with which it will comply.

**ANSWER**:    Admitted that the Complaint attempts to define the putative class as alleged. Denied that the Complaint satisfies the requirements of Rule 23(a) and/or (b), or that Plaintiff and the putative class can maintain a class action against Spirit.

40.    **Numerosity. Fed. R. Civ. P. 23(a)(1).**  Consistent with Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical.  While the exact number of class members is unknown to Plaintiff at this time, it is believed that the Class is comprised of tens of thousands if not hundreds of thousands of members geographically dispersed throughout the United States.  Affected consumer's names and addresses are available from Spirit's records, and class members may be notified of the pendency of this action by recognized, court-approved notice dissemination methods, which may include electronic mail, U.S. Mail, internet notice, and/or published notice.

**ANSWER**:   Spirit lacks sufficient knowledge to form a belief as to the truth of the allegations, and on that basis denies them.

41.   **Predominance of Common Issues. Fed. R. Civ. P. 23(a)(2) and (b)(3).** Consistent with Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact that predominate over any questions affecting individual class members.  The common questions include:

a.   Whether Defendant's conduct breaches its Contract of Carriage?

b.   Whether Defendant is required to give a refund, rather than credit on a future flight when it cancels a flight and cannot reaccommodate the passengers within a reasonable time of the original flight schedule;

c.   Whether Plaintiff and members of the Class are entitled to damages, costs, or attorneys' fees from Defendant;

d.   Whether Plaintiff and members of the Class are entitled to compensatory damages;

**ANSWER**:   Spirit objects to the extent that the allegations in paragraph 41 raise questions of law and/or seek legal conclusions.  Without waiving any objections and subject thereto, denied as stated.

42.   **Typicality. Fed. R. Civ. P. 23(a)(3).**  Plaintiff's claims are typical of other Class members' claims because Plaintiff and Class members were subjected to the same unlawful conduct and damaged in the same way.  Defendant's conduct that gave rise to the claims of Plaintiff and other Class members (i.e., cancelling flights without giving refunds in breach of the Contract of Carriage) is the same for all Class members.

**ANSWER**:   Spirit objects to the extent that the allegations in paragraph 42 seek legal conclusions.  Without waiving any objections and subject thereto, denied.

43.     **Adequacy. Fed. R. Civ. P. 23(a)(4).**  Consistent with Rule 23(a)(4), Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class and is committed to pursuing this matter against Defendant to obtain relief for the Class. Plaintiff has no conflicts of interest with the Class.  Plaintiff's counsel are competent and experienced in litigating class actions, including extensive experience in litigating consumer claims.  Plaintiff intends to vigorously prosecute this case and will fairly and adequately protect the interests of the Class.

<u>**ANSWER**</u>:     Spirit objects to the extent that the allegations in paragraph 43 seek legal conclusions.   Without waiving any objections and subject thereto, Spirit lacks sufficient knowledge to form a belief as to the truth of the allegations regarding the experience or adequacy of Plaintiff's attorneys, and on that basis denies them.  The remaining allegations in paragraph 43 are denied.

44.     **Superiority. Fed. R. Civ. P. 23(b)(3).**  Consistent with Rule 23(b)(3), a class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The purpose of the class action mechanism is to permit litigation against wrongdoers even when damages to individual plaintiffs and class members may not be sufficient to justify individual litigation.  Here, the damages suffered by Plaintiff and the Class members are relatively small compared to the burden and expense required to individually litigate their claims against Defendant, and thus, individual litigation to redress Defendant's wrongful conduct would be impracticable.  Individual litigation by each Class member would also strain the court system. Moreover, individual litigation creates the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.  By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court.

<u>**ANSWER**</u>:     Spirit objects to the extent that the allegations in paragraph 44 seek legal conclusions.  Without waiving any objections and subject thereto, denied.

14

45.     **Declaratory Relief.**  Class certification is also appropriate under Rule 23(b)(2) and (c). Defendant, through its uniform conduct, acted or refused to act on grounds generally applicable to the Class as a whole, making injunctive and declaratory relief appropriate to the Class as a whole.  Moreover, Defendant continues to offer credits instead of refunds to Plaintiff and Class members for flights that they cancel, thus making declaratory relief a live issue and appropriate to the Class as a whole.

**ANSWER**:     Spirit objects to the extent that the allegations in paragraph 45 seek legal conclusions.  Without waiving any objections and subject thereto, denied.

<u>**COUNT I - BREACH OF CONTRACT**</u>

46.     Plaintiff realleges and reincorporates its allegations in paragraphs 1 through 46 above as if fully set forth herein.

**ANSWER**:     With respect to the allegations set forth in paragraph 46 of the Complaint, Spirit responds to paragraph 46 in the same manner that Spirit responded to the paragraphs incorporated therein by reference.

47.     This claim for breach of contract damages or, in the alternative, specific performance of the contract's refund terms, is based on Defendant's breaches of its Contract of Carriage, including its Guest Service Plan (the "Contract").

**ANSWER**:     Denied.

48.     Plaintiff, along with all putative class members, entered into a Contract with Defendant for provision of air travel in exchange for payment.  This Contract was drafted by Defendant.

**ANSWER**:     Admitted that Plaintiff entered into the Contract of Carriage with Spirit when he purchased his ticket.  Without knowledge as to the remaining allegations.

49.     Plaintiff, and all putative class members performed under the Contract, specifically, by tendering payment for the airline tickets to Defendant and complied with all conditions precedent under the Contract.

**ANSWER**:     Denied.

50.     Due to Defendant's cancellation of their flights, Plaintiff, and all putative class members cannot use their airline tickets through no fault of their own and they are not getting the benefit of their bargain with Defendant.

**ANSWER**:     Denied.

51.     Under the terms of the Contract of Carriage drafted by Defendant, Plaintiff and putative class members are entitled to refunds because Spirit cancelled their flights and did not rebook the customers on another flight. Contract of Carriage Art. 10.  By failing to provide refunds, Spirit has breached its Contract of Carriage.

**ANSWER**:     Denied.

52.     Spirit has further breached its Contract of Carriage by failing to provide refunds within seven days for cancelled tickets purchased with credit cards.  Contract of Carriage Art. 15.5.

**ANSWER**:     Denied.

53.     As a result of Defendant's breaches of contract, Plaintiff and the putative class members have incurred damages in an amount to be proven at trial.

**ANSWER**:     Denied.

54.     With regard to the allegations contained in the "REQUEST FOR RELIEF" and "WHEREFORE" paragraphs following paragraph 53 of the Complaint, Spirit denies class action status is appropriate, denies all alleged wrongdoing, denies that Plaintiff was damaged or

aggrieved, and denies Plaintiff is entitled to any relief.  Spirit denies the remaining allegations contained in the "WHEREFORE" paragraphs following paragraph 53 of the Complaint.

55.     Spirit has retained the undersigned attorneys and have agreed to pay them a reasonable fee in connection with the litigation of this matter.

## AFFRIMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE
**(Failure to State a Claim)**

The Complaint, and each purported claim set forth therein, fails to allege facts sufficient to constitute a claim against Spirit.

### SECOND AFFIRMATIVE DEFENSE
**(No Standing)**

Plaintiff's individual and class action claims are barred in whole or in part for a lack of standing.

### THIRD AFFIRMATIVE DEFENSE
**(Waiver/Estoppel/Consent)**

Spirit alleges, based on information and belief, that Plaintiff's Complaint, and the claim alleged therein, is barred, in whole or in part, under the equitable doctrines of waiver, estoppel, and/or consent.

### FOURTH AFFIRMATIVE DEFENSE
**(Failure to Mitigate)**

Plaintiff and the putative class failed to mitigate their damages or take reasonable steps to minimize or prevent the damages claimed to have been suffered.

## FIFTH AFFIRMATIVE DEFENSE
### (Avoidable Consequences Doctrine)

Spirit alleges, based on information and belief, that Plaintiff failed to take reasonable advantage of available procedures to prevent his own damages, and, therefore, Plaintiffs' damages claims are barred, in whole or in part, by the avoidable consequences doctrine.

## SIXTH AFFIRMATIVE DEFENSE
### (Statute of Limitations)

To the extent claims were brought after the expiration of the applicable statute of limitations, period of limitations, or contractual limitations period, Plaintiff's and the putative class's claims are barred.

## SEVENTH AFFIRMATIVE DEFENSE
### (Failure to Allege a Cognizable Class)

Spirit alleges that to the extent that the Complaint seeks to establish a class action, it fails to properly allege a cognizable class.

## EIGHTH AFFIRMATIVE DEFENSE
### (Lack of Typicality)

Spirit alleges that a class action is improper as the claims of the named class representatives are not typical of all putative class members.

## NINTH AFFIRMATIVE DEFENSE
### (Lack of Commonality)

Spirit alleges that a class action is improper as commonality does not exist between the putative class members.

## TENTH AFFIRMATIVE DEFENSE
### (Individualized Claims)

Spirit alleges that a class action is improper as the individualized claims of the named class representative is individual and unique to him and would not lend itself to determination of all of the claims of the purported putative class members.

## ELEVENTH AFFIRMATIVE DEFENSE
### (Failure to plead with sufficient facts)

Spirit alleges that Plaintiff has failed to plead with sufficient facts and specificity as required by the Federal Rules of Civil Procedure, including Fed. R. Civ. P. 8(a).

## TWELFTH AFFIRMATIVE DEFENSE
### (Full Compensation to Named Plaintiff)

Spirit alleges that the named Plaintiff, due to his inaction, was fully compensated in accordance with Spirit's Contract of Carriage, in full and in compliance with the law.

## THIRTEENTH AFFIRMATIVE DEFENSE
### (Federal Preemption)

Federal law, including but not limited to the Airline Deregulation Act of 1978, 49 U.S.C. § 41713, and/or the Federal Aviation Act of 1958, 49 U.S.C. § 40101 *et seq*., and/or the Federal Aviation Regulations, 14 C.F.R. § 1.1, *et seq.* preempts Plaintiff's and the putative class's state law claims in whole or in part.

## FOURTEENTH AFFIRMATIVE DEFENSE
### (Contract of Carriage Bars Class Action Allegations)

Plaintiff's and the putative class's claims are barred in whole or in part by Spirit's Contract of Carriage.  Spirit's Contract of Carriage is always available to passengers and the general public from a link on its website at https://content.spirit.com/ Shared/en-us/Documents/Contract_of_Carriage.pdf.  Additionally, with every passenger's ticket purchase – whether made by calling Reservations, on spirit.com, on the Spirit app, or at the airports – Spirit

provides notice of its Contract of Carriage, and the incorporation of its terms, and makes the full text of the Contract of Carriage available to passengers via web link, through the Spirit app, by mail, at the airports, and at ticket offices.  The foregoing complies with any and all applicable federal common law and regulations, including but not limited to 14 C.F.R. §§ 253.4(a) and 253.5(a).

### FIFTEENTH AFFIRMATIVE DEFENSE
**(Complete Performance)**

Spirit is discharged from all liability due to fully performing and discharging all duties.

### SIXTEENTH AFFIRMATIVE DEFENSE
**(Waiver)**

Plaintiff's and the putative class's claims are barred in whole or in part by waiver, including but not limited to the class action waiver provision in Spirit's governing Contracts of Carriage.   The Contract of Carriage provides for an explicit waiver of the class action certification that Plaintiff now seeks.  Specifically, the Contract of Carriage unequivocally and unambiguously provides, under § 13.2, that:

> No Class Action – Any case brought pursuant to this Contract of Carriage, Spirit's Tarmac Delay Plan, or Spirit's Guest Service Plan **must be brought in a party's individual capacity and not as a plaintiff or class member in any purported class or representative proceeding.**

ECF No. 7-1 at p. 45, § 13.2. [emphasis added].

### SEVENTEENTH AFFIRMATIVE DEFENSE
**(No Actual Damages)**

Plaintiff and the putative class suffered no actual damages related to Spirit's alleged acts and/or breaches.

**EIGHTEENTH AFFIRMATIVE DEFENSE**
**(Failure to Comply with Condition Precedent)**

Plaintiff failed to comply with one or more conditions precedent to the Contract of Carriage in seeking this action for breach of contract.

**NINETEENTH AFFIRMATIVE DEFENSE**
**(Lack of Subject Matter Jurisdiction)**

The Court lacks subject matter jurisdiction as Plaintiff's individual amount in controversy as this Court does not have a proper basis for this Court's exercise of subject matter jurisdiction over Plaintiff's individual claim against Spirit.

**TWENTIETH AFFIRMATIVE DEFENSE**
**(No Private Right of Action under the DOT)**

There is no private cause of action under the U.S. Department of Transportation ("**DOT**") and the DOT Enforcement Notice (the "**DOT Notice**") referenced by Plaintiff in the Complaint, and as such, any such relief Plaintiff seeks via the DOT Notice must be stricken and/or denied.

**TWENTY-FIRST AFFIRMATIVE DEFENSE**
**(No Basis for Equitable Remedy)**

Plaintiff has no basis for an equitable remedy of specific performance as Plaintiff is bound to the terms and conditions of the Contract of Carriage.

**TWENTY-SECOND AFFIRMATIVE DEFENSE**
**(Waiver of Jury Trial)**

The Contact of Carriage contains the following waiver of jury trial provision in § 13.1:

> This Contract of Carriage will be governed by and construed in accordance with the laws of the United States of America and the State of Florida without regard to conflict of law principles or law. **All right to trial by jury in an action, proceeding or counterclaim arising out of or in connection with this Contract of Carriage is irrevocably waived**.

ECF No. 7-1 at § 13.1 [emphasis added].  Plaintiff agreed to the terms and conditions of the Contract of Carriage.  ECF No. 1 at ¶¶ 21, 22.  Plaintiff cannot allege a claim to enforce the Contract of Carriage and simultaneously avoid the jury trial waiver contained in § 13.1 thereof. As such, he irrevocably waived any right to trial by jury in connection with the Contract of Carriage, and Plaintiff's Jury Demand should be stricken.

## TWENTY-THIRD AFFIRMATIVE DEFENSE
### (Attorneys' Fees and Costs)

Plaintiff's demand for attorneys' fees and costs [ECF No. 1 at p. 11] must be stricken as the Contract of Carriage does not contain a provision for the award of attorneys' fees and costs for a prevailing party.  Notwithstanding, Plaintiff does not allege any contractual or statutory basis for the recovery of attorneys' fees and costs, and as such, Plaintiff's demand must be stricken.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE
### (Reservation)

Spirit reserves the right to modify, withdraw, and/or add affirmative defenses as information becomes available during investigation and discovery conducted hereafter.

WHEREFORE, Defendant, SPIRIT AIRLINES, INC., respectfully requests this Court enter an order dismissing the Complaint, together with such other and further relief as this Court deems just and proper.

Dated: May 22, 2020.

Respectfully submitted,

**FRANK, WEINBERG & BLACK, P.L.**

s/Steven W. Marcus
Steven W. Marcus, Esq.
Florida Bar No. 194980
Email:  smarcus@fwblaw.net
Marc A. Silverman, Esq.
Florida Bar No. 144444
Email:  msilverman@fwblaw.net
Stephanie Deutsch, Esq.
Florida Bar No. 503584
Email:  scd@fwblaw.net
FRANK, WEINBERG & BLACK, P.L.
7805 S.W. 6th Court
Plantation, FL 33324
Telephone:  (954) 474-8000
***Counsel for Defendant, Spirit Airlines, Inc.***